UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CITYSPEC, INC. and BRUNO TUCCI,

                        MEMORANDUM AND ORDER

         Plaintiffs,                     CV 07-1224

     -against-                            (Wexler, J.)

M. PATRICIA SMITH, Commissioner of the
New York State Department of Labor,

         Defendant.
------------------------------------------------------------X

       CAMPANELLI & ASSOCIATES, P.C.
       BY: DAVID A. ANTWORK, ESQ.
       Attorneys for Plaintiffs
       129 Front Street
       Mineola, New York 11501

       ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK
       BY: DONYA FERNANDEZ, ESQ., ASSISTANT ATTORNEY GENERAL
       120 Broadway
       New York, New York 10271

WEXLER, District Judge

      In this action, Plaintiffs allege that the New York State statute regulating the business of boiler inspection violates the United States Constitution. Named as Defendant is the New York State official alleged to be responsible for administration and enforcement of the statute. Arguing that there are no questions of material fact, both parties move for summary judgment. For the reasons that follow, Plaintiffs' motion is denied, and Defendants' motion is granted.

1

## BACKGROUND

I. The Boiler Inspector Statute and Regulations

In view of the fact that the New York State statute regulating the inspection of boilers, and rules promulgated pursuant thereto, are at the core of this litigation, the court will first describe the relevant statutory and regulatory framework.

Inspection of boilers within the State of New York is subject to the detailed statutory scheme set forth in Section 204 of the New York State Labor Law ("Section 204"). That section provides that the New York State Commissioner of the Department of Labor (the "Commissioner") shall cause boilers, as defined in the law, to be inspected annually or, depending upon the type of boiler, at least once every two years. N.Y. Labor L. §204(1).

The identity of those who may conduct boiler inspections, and the credentials they must hold is also set forth in the Section 204. First, those employed by the Commissioner, meaning state employed boiler inspectors, may conduct statutory inspections. Second, Section 204 authorizes inspections by insurance companies that meet statutory and regulatory requirements. The statutory source allowing for inspection of boilers by insurance companies lies in subsection 8 of Section 204. That subsection states that boilers inspected by insurance companies are exempt from the requirement of additional inspection by the Commissioner. Insurance company employees who may conduct statutory boiler inspections must hold "certificates of competency," issued by the Commissioner, according to promulgated rules and regulations. See N.Y. Labor L. §204(8)(a)(b); 12 N.Y.C.R.R. §4-2.3.

In addition to providing for state boiler inspection, the statute addresses boiler inspection by cities. Section 204 distinguishes between "cities," and other political subdivisions by

2

specifically charging cities with the obligation to carry out the inspection duties of the Commissioner. Pursuant to this duty, cities are empowered to enact local laws regulating the inspection of boilers within their respective jurisdictions. N.Y. Labor L. §204(7). Inspection of boilers located in cities may be conducted by "competent inspectors employed by the city," or by insurance companies, as set forth in the Labor Law. N.Y. Labor L. §204(7).

The City of New York, and other cities within the Sate, have been granted permission by the State to allow for the inspection of boilers by entities other than city employees. For example, in 1991, the New York State Department of Labor issued a variance to New York City allowing for the inspection of boilers by certain licensed boiler installers. While that variance denied a request to allow for inspection by any Master Plumber, the State re-visited that denial in 1992, and issued the requested variance. Later that year, the State Department of Labor issued a decision requiring that those conducting boiler inspections within the City of New York possess an Oil Burner Installer License issued by New York City. As the foregoing demonstrates, New York City has obtained the right, from the State Department of Labor, to have boiler inspections conducted by a broader class of inspectors than that specified in the Labor Law.

Political subdivisions that are not cities are not authorized by the Labor Law to carry out the duties of the Commissioner with respect to the inspection of boilers. Neither these entities, nor the State of New York, have extended to class of those authorized to conduct boiler inspections to include private entities other than insurance companies. Thus, according to the statutory scheme, boiler inspections throughout the State of New York are authorized to be conducted by state boiler inspectors and authorized insurance companies. In cities, boiler inspections may be conducted, additionally, by those authorized pursuant to a State-issued

3

variance. This includes inspection by private non-insurance company entities that meet city regulations.

Consistent with Section 204, the regulation governing the boiler inspection competency examination provides that those wishing to take the test be, inter alia, "actually in the employ of the State of new York, a duly authorized insurance company or a qualified city . . . ." 12 N.Y.C.R.R. §4-2.3(c). The regulation gives the Commissioner the discretion to waive these requirements upon a finding that "such waiver is necessary or convenient for the enforcement or administration of" Section 204." 12 N.Y.C.R.R. §4-2.3(c).

## II. Plaintiffs' Business and the Factual Allegations of the Complaint

Plaintiff Cityspec, Inc. ("Cityspec") is a corporation engaged in the business of conducting boiler inspections. Plaintiff Bruno Tucci ("Tucci") is an employee of Cityspec.

### A. Cityspec's Inspections Within Cities

Cityspec has taken advantage of the variance granted to New York City allowing non-insurance company entities to conduct boiler inspections. Cityspec also states that it has engaged in the business of boiler inspection in other cities in the State of New York, specifically, the cities of Yonkers and Great Neck. In many cases, Cityspec states that it has been hired by insurance companies to inspect boilers. Cityspec has been successful in obtaining the right to inspect many boilers throughout the State of New York. Indeed, the company states that it "commands over 30% of the boiler inspection market in New York City, Yonkers and Great Neck."

### B. Cityspec's Attempts To Obtain A State-Wide Variance

While Cityspec has enjoyed success in its business operations, the Labor Law's statutory

4

scheme precludes it from expanding its business to include areas within the State of New York that are not cities, including large areas located within Nassau and Suffolk counties. In light of the statutory bar, Cityspec has attempted to obtain the right to inspect boilers state-wide by seeking a variance of Section 204. To that end, in December of 2001, Cityspec applied to the New York State Department of Labor for a variance that would allow the company to conduct statutory inspection of boilers outside of cities. The Department of Labor opposed the variance, interpreting Section 204 to allow only for inspection by state and city employees, and by insurance companies.

The variance sought by Cityspec was denied by the Department of Labor in a decision dated February 15, 2002. That decision relied upon the statement of the New York State Chief Boiler Inspector who opined that there was no need for the variance. In support of his position, the Chief Boiler Inspector drew a distinction between insurance companies, that have a vested interest in the validity of their inspections and private companies. Specifically, the Chief Boiler Inspector focused on the fact that a malfunctioning boiler could result in damage and a claim against an insurer. This possibility gives insurance companies a particular interest in conducting accurate boiler inspections that ensure boiler safety. This interest is contrasted with that of a private entity such as Cityspec, which would be interested only in receiving an inspection fee. The Chief Boiler Inspector concluded that these different interests would result in a potential public hazard if the variance requested by Cityspec were approved.

Cityspec appealed the denial of its variance to the Labor Department Industrial Board of Appeals ("IBA"). That appeal was denied in 2004. In its decision denying the appeal, the IBA noted the statutory limitation on the class of individuals entitled to conduct boiler inspects as set

forth above. The IBA further noted that the Commissioner could waive those requirements upon a finding that such waiver (also referred to as a "variance") is "necessary or convenient for the enforcement or administration of" the Labor Law. Finding that Cityspec introduced no evidence as to this issue and, upon full review of the record, the IBA held that the Commissioner's decision denying the waiver should be affirmed.

On October 17, 2005, Steven Kleva, a Cityspec vice president, wrote to the Chief Boiler Inspector of the State of New York, inquiring as to whether a Cityspec employee would be able to sit for the boiler inspector competency examination. In response, Kleva was advised that only those employed by certain cities, or by authorized insurance companies may take the examination. Kleva wrote a letter dated October 19, 2005 to a State Labor Department Commissioner, again asking that Cityspec be allowed to perform boiler inspections state-wide. On October 31, 2005, the Director of the Safety and Health Division of the New York State Department of Labor responded to Kleva's inquiries. That letter referenced the prior denial of Cityspec's variance, and the rationale of the IBA in upholding the denial. It stated further that Cityspec had produced no information indicating that it was "necessary or convenient" for a waiver to be approved.

In July of 2006, Plaintiff Tucci applied to the New York State Department of Labor for a boiler inspection certificate of competency. He has been advised that since he is not employed by an insurance company, he may not apply for the certificate.

C.     <u>Allegations and the Parties' Submissions As To Similarly Situated Entities</u>

Despite the Department of Labor's policy barring individuals not employed by the State, city, or an insurance company from becoming certified to conduct statutory boiler inspections,

Plaintiffs allege that for the past six years, Defendant has allowed other private inspection companies, similarly situated to Cityspec, to engage in the boiler inspection business throughout the state. Specifically, Plaintiffs allege that employees of a company known as Arise, Inc. ("Arise"), which is not an insurance company, have been allowed to become certified boiler inspectors. Arise employees are alleged to have conducted statutory boiler inspections throughout the State of New York.

In response to the charge that the State has allowed Arise, a private non-insurance company, to conduct boiler inspections throughout the state, Defendant has submitted documents detailing the business relationship between Arise and the State. Those documents show that Arise has been conducting boiler inspections in New York State since 1994. It is clear that at that time, Arise represented itself to the State as a part of the Seneca Insurance Company. Arise inspectors continued to be renewed as licensed boiler inspectors through 2000.

Correspondence between Arise and New York State spanning the period of 2004 through the present, reveals that state officials have become concerned as to whether Arise was, indeed, authorized under the Labor Law In to perform inspections. In a letter dated November 30, 2004, the New York State Chief Boiler Inspector wrote to counsel for Arise and noted that Arise was not listed as an authorized insurance company within the State of New York. The letter asked whether Arise was a company authorized to write Boiler and Machinery Insurance, as required by Section 204, to be authorized to conduct inspections within New York. Subsequent correspondence refers to corporate reorganizations, and an ongoing dialogue with the State as to whether Arise employees could continue to be authorized to inspect boilers. The last piece of correspondence before the court, dated February 24, 2009, is an inquiry from the Department of

Labor to the Principle Attorney for the New York State Insurance Department asking for an opinion as to whether Arise, in its present corporate form, falls within the definition of those entities authorized to conduct boiler inspections as set forth in the Labor Law. As the documents reveal, the state has not yet reached a decision as to whether Arise may continue to conduct boiler inspections, and its eligibility remains an open question.

III. <u>Legal Claims Alleged</u>

Plaintiffs allege that Section 204 deprives them of the constitutionally protected liberty interest to engage in a chosen profession without Procedural and Substantive Due Process of Law, in violation of the Fourteenth Amendment. Plaintiffs further allege that Section 204 violates their Fourteenth Amendment right to Equal Protection of the Law. This cause of action alleges both an irrational statutory scheme, and the unconstitutional application of that scheme to allow boiler inspection by non-insurance company entities similarly situated to Cityspec. Finally, Plaintiffs allege that barring Tucci from taking the boiler inspection licensing examination deprives him of his First Amendment right to petition the government.

IV. <u>The Motions for Summary Judgment</u>

Plaintiffs and Defendant cross-move for summary judgment.

Plaintiffs argue that they have alleged the existence and violation of a clearly defined Constitutionally protected interest, <u>i.e.</u>, the right to engage in a chosen profession. Plaintiffs argue that the Section 204 distinction carving out an exception allowing for insurance company inspection is wholly irrational. Plaintiffs further argue that the statute has been unconstitutionally applied in violation of the equal protection clause to allow employees of Arise to obtain certificates of competency to conduct boiler inspections while denying the same right to

8

Cityspec employees. Finally, Plaintiffs argue that there is no question of fact regarding the deprivation of Tucci's First Amendment right.

Defendant argues that Plaintiffs' alleged protected right to engage in one's chosen profession is not so broad as to encompass the right to expand one's business into every territory desired. Even assuming the validity of the interest asserted, Defendant argues that there has been no deprivation of any such right, since the government may enact regulations that are rationally related to its interests. Defendant further argues that the level of conduct alleged by Plaintiffs cannot rise to the level of a violation of substantive due process. Defendant counters Plaintiffs' Equal Protection argument by explaining that Arise misrepresented itself to the State, and an investigation into that company is ongoing. Finally it is argued that the licensing requirement does not deprive Tucci of his First Amendment right to petition the government.

After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. Standard for Summary Judgment

The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). The Court should not grant summary judgment if there is "any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 353; Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). In addition, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec.

9

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586. A party opposing summary judgment may not rest upon mere allegation or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. "The mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). Enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Anderson, 477 U.S. at 248.

II. Disposition of the Motions

A. Procedural Due Process

To succeed on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected interest; (2) that the State deprived him of this interest; and (3) that the deprivation was effected without due process of law. Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Town of Huntington, 31 F.3d 1191, 1194 (2d Cir.1994). The threshold issue for the court to consider is whether Plaintiffs have a constitutionally protected interest. DeMichele v. Greenburgh Cent. Sch. Dist., 167 F.3d 784, 789 (2d Cir. 1999). It is only after establishing such interest, that the court can determine whether there has been any deprivation, and the level of process that is due. Datri v. Incorporated Village of Bellport, 2006 WL 2385429 *4 (E.D.N.Y. 2006); Allocco Recycling, Ltd. v. Doherty, 378 F. Supp.2d 348, 365 (S.D.N.Y. 2005). In the event that a plaintiff cannot establish a Constitutionally protected right, the claim must be dismissed without consideration as to whether the "right" has been denied in

violation of the Constitution. Donato v. Plainview-Old Bethpage Central Sch. Dist., 96 F.3d 623, 628-29 (2d Cir. 1996); see Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972); .

Plaintiffs here allege a Constitutionally protected right to engage in a chosen profession, free from arbitrary and irrational governmental interference. This right is referred to by Plaintiffs as constituting both a property and a liberty right.

The liberty interests protected by the Fourteenth Amendment include the freedom "to engage in any of the common occupations of life." Board of Regents v. Roth, 408 U.S. 564, 572 (quoting Meyer v. Nebraska, 262 U.S. 390, 399(1923)). This right is not broad as to protect the right to a particular job. As noted by the Supreme Court, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." Roth, 408 U.S. at 575. In the context of a failure to re-hire an individual, a liberty interest is therefore implicated only if the decision not to re-hire is accompanied by some other action, such as the making of a defamatory statement, that would interfere with the prospect of future employment. Donato, 96 F.3d at 630-31.

The Second Circuit has also referred to the "liberty interest in earning a livelihood" in connection with obtaining a state license to pursue a particular occupation. In cases challenging licensing requirements, a plaintiff alleging deprivation is not required to show an entitlement to the license. RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 n.4 (2d Cir. 1989). The liberty interest is "impaired if the license is arbitrarily denied." Id.

Whether this case is viewed as alleging deprivation of a liberty or property interest, it is clear that the interest alleged to have been interfered with is the interest in pursuing a chosen occupation. As the foregoing cases make clear, that right is not absolute, and an unconstitutional

11

deprivation does not occur any time the State regulates a profession. Instead, it is only when the challenged action effectively prohibits one from engaging in a profession, or pursuing any job in a given field that there is a deprivation entitled to protection. No such right is implicated here.

Plaintiffs make clear that they are actively engaged in the chosen profession of boiler inspection. Cityspec runs a successful business inspecting boilers. That business includes over 30% of the boiler inspection market in cities located within New York State. The exclusion of Plaintiffs from conducting additional state mandated boiler inspections interferes not with the right to engage in a profession, but only in the ability to expand market share within a particular area. The court holds that the right to expand one's business is neither a liberty nor a property right protected by the Constitutional right to engage in a chosen profession.

In so holding, the court rejects Plaintiff's argument that judgment in their favor is required by the holding of the court in Cowan v. Corley, 814 F.2d 223 (5th Cir. 1987). Not only is Cowan not binding on this court, but the facts and procedural posture are distinguishable. The allegation supporting the civil rights claim in Cowan was that requiring membership in a trade association as a prerequisite for performing certain government towing services deprived those not in the association of the liberty right to pursue one's occupation. Cowan reversed the district court's grant of a motion to dismiss and held, not surprisingly, that the Constitution recognizes a liberty interest in pursuing an occupation. In limiting its holding to the fact that plaintiff stated a claim sufficient to withstand a Rule 12 motion, the Cowan court noted that "the right to engage the occupation of one's preference is not absolute." Cowan, 814 F.32d at 228. Where, as here, the issue before the court arises after discovery in the context of a Rule 56 motion for summary judgment, Cowan does not compel the result Plaintiffs seek.

More on point is the decision of the Southern District of New York in <u>Alloco Recycling, Ltd. v. Doherty</u>, 378 F. Supp.2d 348 (S.D.N.Y. 2005). There, the court was faced with evaluating plaintiff's constitutional challenge to a denial of a permit that would have allowed expansion of plaintiff's business. The court noted that plaintiff complained not of the right to engage in the occupation at issue, but of the right to expand that business. <u>Allocco</u>, 378 F. Supp.2d at 374. Recognizing no such protected right, the court dismissed the due process claims holding that "the Due Process Clause does not protect the claimed liberty of maximizing one's business or profit merely because it guards against government prohibition of entry into that business altogether." <u>Id</u>. This court agrees.

B.   <u>Substantive Due Process</u>

To prevail on a claim that a state regulation violates substantive due process, a plaintiff must show: (1) that the regulation deprives plaintiff of a constitutionally protected right and (2) that the regulation lacks any rational relationship to a legitimate state interest. <u>Kittay v. Giuliani</u>, 112 F. Supp.2d 342, 352 (S.D.N.Y. 2000); see <u>Harlan Associates v. Incorporated Village of Mineola</u>, 273 F.3d 494, 503 (2d Cir. 2001); <u>Crowley v. Courville</u>, 76 F.3d 47, 52 (2d Cir. 1996); <u>Datri v. The Incorporated Village of Bellport</u>, 2006 WL 2385429 (E.D.N.Y.2006).

Plaintiffs here fail to show either requirement. First, as discussed, the protected interest relied upon by Plaintiffs, <u>i.e.</u>, the right to engage in a chosen profession, is not so broad as to include the right to expand one's business, free from governmental regulation. Second, Plaintiffs fail to show that the challenged regulation lacks a rational relationship to a legitimate governmental interest. Section 204 exists to further the legitimate state goal of maintaining the safety of boilers. The statute draws a distinction allowing for the inspection of boilers by

13

insurance companies recognizes the rational belief that these entities have an interest in performing accurate and safe inspections. The state legislature has made the rational connection between an insurer's interest in boiler safety (to minimize the possibility of boiler malfunctions, injury and claims) and conducting a proper inspection. No similar rational relationship has been found to exist between other private entities and boiler safety. Under these circumstances, the court holds that the New York State legislature acted rationally when it carved out an exception to Section 204 allowing for insurance company boiler inspection. Accordingly, Plaintiffs' substantive due process argument must fail and this claim is dismissed.

  C. <u>Equal Protection</u>

  I. <u>Facial Challenge</u>

The Fourteenth Amendment right to Equal Protection of the law is "essentially a direction that all persons similarly situated be treated alike." <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985); <u>Disabled American Veterans v. United States Dep't of Veterans Affairs</u>, 962 F.2d 136, 141 (2d Cir. 1992). The right to equal protection prohibits classification due to membership in a protected class, <u>Giano v. Senkowski</u>, 54 F.3d 1050, 1057 (2d Cir. 1995), and also extends to individuals who allege disparate treatment based upon ill will, or without rational basis. <u>Harlen Assocs. v. Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001).

Plaintiffs here do not, and cannot allege membership in any protected class. The only question therefore, is whether the classification drawn in Section 204 bears the required rational relationship to a legitimate state interest. Where such a claim is made, a defendant is entitled to summary judgment upon a showing that "there exists no factual dispute on the basis of which a

reasonable factfinder could conclude that the challenged legislation was 'clearly arbitrary and unreasonable.'" New York State Trawlers Association v. Jorling, 16 F.3d 1303, 1309 (2d Cir. 1994) (citation omitted). Summary judgment is therefore appropriate where the legislation at issue is rationally related to a legitimate state interest. Id. The legislation need not be the best, or only way of promoting that interest, it need only be a reasonable means of doing so. Id.

The state interest in requiring inspection of boilers is to maintain the safety of these devices, and thereby avoid injury. Defendant takes the position that this important interest is furthered by regulating those who may conduct inspections, and limiting those inspectors to include state employees and insurance companies. The reason that insurance companies are the only private entities that may conduct state sanctioned inspections is the recognition of the financial interest of these companies in conducting proper inspections. Specifically, the State has recognized that an improper inspection can lead to malfunction, injury and claims against the insurer. Therefore, the insurance company is in the unique position of having a direct financial stake in conducting safe and accurate boiler inspections.

The court holds that naming insurance companies as the only private entities authorized by statute to conduct state boiler inspections bears the required rational relationship to the State's interest in promoting safety. As such, it was rational for the State to allow for inspections to be conducted by insurance companies, and not other entities that might not have the same strong financial interest in safety. Accordingly, Section 204's classification passes muster under the Equal Protection Clause of the Constitution, and the court dismisses the facial challenge to the statute.

ii. <u>As Applied Challenge</u>

The second theory of Plaintiffs' Equal Protection argument states that Plaintiffs have been treated differently than other similarly situated entities. At this state in the proceedings it is clear that this challenge is limited to the argument regarding the licensing of Arise employees as boiler inspectors.

To prevail on their claim, Plaintiffs must show a high degree of similarity between Cityspec and Arise, and that any difference in treatment as to Arise is without rational basis. <u>Engquist v. Oregon Dept. of Agriculture</u>, 128 S. Ct. 2146, 2153 (2008) (different treatment of those who are similarly situated requires at least a rational reason for the difference).

As the documents before the court demonstrate, when Arise employees first became licensed boiler inspectors, they were insurance company employees. At that time, they fell within the Section 204 definition of those authorized to conduct boiler inspections, and were not similarly situated to Cityspec. Assuming, as argued by Cityspec, that both Cityspec and Arise are currently private non-insurance company entities engaged in the boiler inspection business, the court assumes that these entities are sufficiently similar to satisfy the first prong of the "as applied" Equal Protection challenge. The court holds however, that Cityspec fails to show that any difference in the State's treatment of Arise to date is without rational basis.

When it became clear to the state that Arise may not be an insurance company, the State acted to delay the renewal of inspection certificates for Arise employees, and embarked upon an investigation. That investigation is ongoing. The investigation of Arise shows the State's enforcement of Section 204, and that all non-insurance company entities are treated the same. The State's past different treatment of Arise was based upon its rational belief that this company

was an insurance company authorized to conduct boiler inspections throughout the State of New York. When that assumption was called into question, the State continued to act rationally to investigate Arise to determine whether or not the company could continue to be licensed within the parameters of Section 204. Thus, the court concludes that any different treatment of Arise was, and is, to date rational. Accordingly, even assuming current substantial similarity between Cityspec and Arise, and differences in treatment were rational acts of the State and Plaintiffs' as applied Equal Protection claim must be dismissed.

D. First Amendment

Plaintiff Tucci claims that the denial of his right to take the inspection competency examination deprives him of his First Amendment right to petition the government.

The First Amendment protects the right of access to the courts. Lewis v. Casey, 518 U.S. 343, 350 (1996); Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997); Patriots Way, LLC v. Marconi, 2007 WL 988712 *4 (D. Conn. 2007). When the government obstructs an individual's effort to seek judicial redress, this right is violated. Whalen v. County of Fulton, 126 F.3d 400, 406 (2d Cir. 1997). Also protected is "[t]he right to complain to public officials and to seek administrative and judicial relief." Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp.2d 364, 372 (E.D.N.Y. 2001) (quoting, Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994)).

Plaintiffs appear to argue that because Tucci was not employed by an insurance company and was therefore not eligible to take the boiler inspection competency examination, he was somehow deprived of his First Amendment right to petition the government. The eligibility requirement established by Section 204, and promulgated in the relevant regulation, however,

17

deprives Plaintiff of no such right. Avenues exist to petition the government for a variance from the Section 204 eligibility requirements. Indeed, Cityspec has specifically availed itself of that process by seeking a variance. The fact that the variance was not granted does nothing to defeat the fact that the procedure exists. The First Amendment guarantees a right to access, not a right to a particular desired result. Kittay, 112 F. Supp.2d at 354; see Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285-86 (1984).

The facts here simply do not establish any bar erected by Section 204 that deprives Tucci of his First Amendment right to petition the government. Plaintiffs' First Amendment claim is therefore dismissed.

### E. Public Policy Argument

The court notes that Plaintiffs have submitted documents in an effort to show that the State is behind in its inspection of boilers. It is argued that under the present situation the Commissioner should be required to exercise his discretion to waive the requirements of Section 204, as such a waiver is "necessary or convenient for the enforcement or administration of" the statute. See 12 N.Y.C.R.R. §4-2.3(c). Defendants have submitted sufficient evidence showing that no such dire situation exists. Even if the State were, in fact, as behind in the inspection of boilers as alleged by Plaintiffs, the court would find no Constitutional violation. It is clear that Section 204 gives the Commissioner broad discretion to determine whether the status of inspections requires a waiver of Section 204. Plaintiffs' papers show neither ill will toward Cityspec, nor an irrational refusal to exercise discretion. Under these circumstances the court will not interfere with the Commissioner of Labor's discretionary decision.

## CONCLUSION

Plaintiffs' motion for summary judgment is denied. Defendants' motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motions for summary judgment and any other outstanding motions and to close the file in this case.

SO ORDERED

_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
May 18, 2009